# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID KEITH WILLIAMS,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 14-487-RAW-SPS ) |
| **ANITA TRAMMELL, et al.,** | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This action is before the court on the defendants' motions to dismiss or for summary judgment. The court has before it for consideration Plaintiff's complaint, the defendants' motions, Plaintiff's responses, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of the DOC who is incarcerated at Oklahoma State Penitentiary in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983. He is seeking relief for alleged constitutional violations arising under the First, Sixth, and Eighth Amendments, as well as the Due Process Clause and the Equal Protection Clause during his incarceration at that facility. The defendants are Anita Trammell, OSP Warden; Dr. John Marlar, OSP Physician; Mona Allen, OSP Mail Supervisor; David Orman, OSP Mail Supervisor; Steve Thompson, OSP Nurse; Bill Thibodeaux (incorrectly named in the complaint as Bill Tibedux), OSP Nurse; Jerry Perry, OSP Supervisor; Cpt. L. Long, OSP Supervisor; Officer Suddith, OSP Supervisor; OSP Sgt. S. Marshall; OSP Sgt. McCall; and OSP Nurse Jane Doe.[1]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, Plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

Plaintiff alleges in his lengthy, disorganized, and repetitive complaint that in January 2013, he was housed in the Southeast H-Unit. On January 23, 2013, at approximately 10:20 p.m., he was escorted to the medical unit for what he describes as "poisoning effect." The nurses said his symptoms could be caused by acid reflux, but Plaintiff explained he felt "poisoned, not nauseous." He then was escorted back to his cell.

On March 9, 2013, Plaintiff's symptoms returned, and he was escorted to the medical observation unit. He claims he was "given runaround or evasive explanation" as to his description of feeling poisoned. He again was returned to his cell.

On July 10, 2013, Plaintiff saw Defendant Sgt. McCall "feeding 'chow' or food" to the inmates. Plaintiff noticed McCall place a "regular" food tray in Inmate Elliot's food slot or "beanhole," and then McCall took that same food tray from Elliot's food slot and put it on the food serving cart. Plaintiff explains that Elliot's food tray was a "regular" food tray, when Elliot actually should have received a double- portion food tray that was authorized for medical or religious reasons. McCall continued this practice at other inmates' food holes, giving other inmates the opportunity to poison the tray.

Plaintiff was concerned that by placing food trays in the food slots of inmates in administrative segregation, McCall was taking a risk that an inmate could contaminate or poison the food on the tray, before it was served to inmates further down the line. Plaintiff, therefore, asked Sgt. McCall to stop this practice, and for a few days, McCall granted Plaintiff's request to allow Plaintiff to pick which food tray from the food cart would be used to serve his meals. McCall allowed Plaintiff to choose his food tray for a few days, but after McCall stopped allowing this practice, Plaintiff became violently ill on July 14, 2013. Plaintiff, however, did not seek medical attention on that occasion. Plaintiff learned later that another African-American inmate, on a different pod of the Southeast H-Unit, also was poisoned by Defendant McCall.

Plaintiff claims he sent three letters to the United States Attorney, apparently complaining about the alleged poisonings and mishandling of his mail, but he did not receive

2

a response. He contends this is evidence of his being held incommunicado by Defendants Allen and Orman. Defendant Thompson also allegedly has denied Plaintiff his right to redress grievances submitted to OSP Medical. Later in 2013, prison officials moved certain inmates from Plaintiff's pod, and he maintains these other inmates were the inmates who were given the opportunity by Defendant McCall to taint or poison the food trays. Plaintiff suspects that Defendant Trammell, who supervised the movement of those inmates, intercepted Plaintiff's letters to the U.S. Attorney and ordered those inmates be moved.

Plaintiff further alleges that on February 8, 2014, OSP Inmate Jones was found unresponsive in his cell. Plaintiff asserts he saw Defendant Marshall and other officials harassing Jones, and Inmate Jones had claimed he was being fed tainted food by prison officials. Even after this incident, officials would not allow Plaintiff to choose his own tray, allegedly resulting in numerous stomach ailments.

On June 4, 2015, Plaintiff shoved two food trays out of his food slot, claiming officials were serving him trays he had not chosen. He claims most of the officers know he wants to pick out his food tray, and they deny letting him do this out of "sadistic humor." Plaintiff admits he shoved the two trays, but claims Officer Hartness fabricated evidence about the incident. Plaintiff contends he received a light punishment, because he threatened to reveal what he knew about Inmate Jones.

Plaintiff also alleges that on June 16, 2014, an OSP officer opened multiple run gates simultaneously, and on August 16, 2014, Defendant Marshall left the unit run gate open for an extended period of time. Plaintiff placed signs on his cell door advising that Marshall and other officers had placed the occupants in danger by leaving the run gate and office door open at the same time. On August 25, 2014. Plaintiff confronted Marshall about not closing the run gate, saying that Marshall had jeopardized lives. Plaintiff was issued a misconduct, but received only a light sentence, because he told Officer Thomas that he would go on the record about what he knew about Inmate Jones.

Plaintiff also alleges Defendant Warden Anita Trammell was deliberately indifferent

3

for failing to respond to his grievances, beginning in April 2014. Plaintiff submitted sick call requests stating he had good reason to believe that numerous staff members had motive to harm him. He had informed medical personnel and unit team members of his concern about food handling and the incident with Inmate Jones. Plaintiff's legal mail was ignored, and no official has asked him about what he believes happened to Inmate Jones. He also believes Warden Trammell has turned a blind eye to his attempts at redress through grievances, because she does not want the truth revealed.

In September 2014, Plaintiff placed a sign on his cell door, stating he would not eat from the food trays unless he could pick his own tray and alleging that officers were leaving run gates open. He also claims that on September 2, 2014, he wrote a letter to this court requesting mandamus relief. He asserts that on September 4, 2014, Defendants Perry, Long, and Suddith and told him they were going to weigh him. Defendant Long allegedly stated, "You don't have a choice," before Plaintiff's food slot was opened and pepper spray was administered. Long also allegedly ordered officials to cut off Plaintiff's water.

Plaintiff claims that after being sprayed, he put his hands through the food slot to be handcuffed, and Defendant Suddith slammed his riot baton down on Plaintiff's hands, breaking his left small finger. Plaintiff then was taken to the medical observation room, where Defendant Thompson turned on a faucet to a trickle, so Plaintiff could rinse his eyes. Thompson then said there was nothing wrong with Plaintiff, so he was returned to his cell. He was not decontaminated or allowed to use the showers. The defendants then removed Plaintiff's property from his cell, leaving him in his boxers for three days. The water was turned back on in his cell the next day at his request.

On September 17, 2014, Plaintiff allegedly tried to contact this court and attorneys Don Pope and Louis Bullock. Defendant Orman, however, allegedly delayed his mailings for two days in retaliation for Plaintiff's filing a grievance against Orman's son. When Plaintiff corrected the deficiencies with the disbursement form, Defendant Orman allowed the mail to be sent. Plaintiff asserts that the only response to his mailing was from this court. He also has

4

a general claim that the defendants have not allowed him to mail U.S. Mail or privileged mail.

On September 19, 2014, Plaintiff was issued a misconduct for failing to obey orders related to the September 4 incident, and a hearing date was set for September 26, 2014. Plaintiff contends Defendant Perry was the hearing officer, even though Perry was present during the incident. Plaintiff claims there were five incident reports submitted, but Defendants Perry, Long, and Suddith did not submit incident reports. Plaintiff was found guilty at the hearing, and the warden affirmed.

Plaintiff next alleges that on October 2, 2014, he noticed that his urine was brown. He alerted an official who called for medical. Defendants Thibodeaux, Defendant Nurse Jane Doe, and Cpl. Cecil arrived in approximately 30-45 minutes. They examined Plaintiff and his urine and asked how he felt. Plaintiff reported that he felt dizzy and nauseous. Later that night, Plaintiff's urine returned to being clear, but he feels a burning sensation in his genitals.

On September 17, 2014, and October 22, 2014, officers allegedly came to Plaintiff's cell with "waiver forms." Plaintiff claims he told them he was not waiving any of his rights to medical care. On October 29 and 31, 2014, Plaintiff refused two food trays that were served by two officials. He also complains that on September 4, 2014, he was not given the opportunity to be weighed by medical staff, and Dr. Marlar disregarded Plaintiff's well-being and safety. Plaintiff alleges the food trays then were placed back on the food cart. He asserts this method of food handling gave racist inmates the opportunity to harm him.

**Plaintiff's Second Motion to Object to Judge Ronald A. White's Impartiality and Denial of Plaintiff's Motion to Stay the Proceedings (Dkt. 96)[2]**

On February 24, 2015, the court denied Plaintiff's motion for stay (Dkt. 60) for his failure to show good cause for the court to issue a stay (Dkt. 64). He was advised that the court cannot give legal advice to a litigant, and the court listed the forms available from the Court Clerk. *Id*. He was further advised to follow the Federal Rules of Civil Procedure and

---

[2] Plaintiff's first motion objecting to Judge White's impartiality and denial of stay (Dkt. 95) was denied on June 30, 2015 (Dkt. 100).

the Local Civil Rules for information about filing documents in his case and for discovery procedures. *Id*. The Court Clerk was directed to send him a copy of the docket sheet for this action. *Id*.

Plaintiff has filed a second motion complaining about this ruling. (Dkt. 96). He asserts he made inquiries to the court concerning the status of his request for a trial by a jury of his peers and certain forms for a mandamus petition and class certification. He also alleges he requested from the Court Clerk the number and full contents of his submitted exhibits, because he claims to have no knowledge of whether the court actually received his exhibits. He also complains that he has been denied the appointment of counsel and the means to obtain legal assistance from the court or his custodian.

Plaintiff further objects to the District Court Judge's discretion to preside over this civil action and to be "malicious and belligerent." (Dkt. 96 at 4). He wants the proper attention to be paid to his lawsuit, considering his custodians told him to "lay down and die" when he advised them of blood in his urine. *Id.* He also complains he lacks the legal resources to determine whether this court is using the wrong legal standard or is abusing its discretion, and he only has use of the Legal Resource Center computer on a limited basis. *Id.* at 5. Plaintiff feels he is being judged by his past criminal acts, and the constitutional violations he has suffered have not been given attention. He objects to any adverse rulings in his case.

A review of the record shows that Plaintiff has submitted no motions requesting relief for his "inquiries" to the court. To the extent he is raising new claims about access to legal materials at his facility, he must present this claim in a new civil rights action, pursuant to 42 U.S.C. § 1983. As for his medical issue of blood in his urine, the court discusses that claim below.

Regarding his assertion that the District Judge has not been impartial in this action, Plaintiff has not pointed to any act or speech by the district judge indicating bias, prejudice, or the appearance of impropriety. *See Mitchell v. Maynard*, 80 F.3d 1433, 1450 (10th Cir. 1996) (noting even appearance of impropriety must be avoided). To the extent Plaintiff is

relying on adverse rulings to show bias, "adverse rulings against a litigant cannot in themselves form the appropriate grounds for disqualification." *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993). Therefore, Plaintiff's second motion to object to the District Judge's impartiality and denial of Plaintiff's motion to stay the proceedings (Dkt. 96) is denied.

**Standard of Review for Dismissal Under Fed. R. Civ. P. 12(b)(6)**

Defendants Trammell, Marlar, Allen, Orman, Thompson, Perry, Long, Suddith, Marshall, McCall, and Thibodeaux have filed motions to dismiss or for summary judgment (Dkts. 75, 133). A plaintiff must give a "short and plain statement of the claim showing that the pleader is entitled to relief" under Fed. R. Civ. P. 8(a)(2). In assessing a motion to dismiss, the court must accept the factual allegations as true and consider them in the light most favorable to the plaintiff. *Tomlinson v. El Paso Corp,*, 653 F.3d 1281, 1285–86 (10th Cir. 2011) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 132 S.Ct. 1574 (2012). A request for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the court is required to exercise a liberal interpretation of Plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519 (1972), the court need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id*. (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief

7

can be granted." *Id*.

**Defendants Warden Anita Trammell and Dr. John Marlar**

Defendants Trammell and Marlar allege Plaintiff has failed to allege they personally participated in any constitutional violations alleged in the complaint (Dkt. 75 at 43-44). Plaintiff believes Defendant Trammell ordered the relocation of inmates who could have tainted his food, and he suspects she may have intercepted his letters to the U.S. Attorney. She also allegedly failed to respond to his grievances, because she did not want the truth about Inmate Jones revealed. Plaintiff's suspicions alone are not sufficient to state a cause of action.

Furthermore, "[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id*. *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Moreover, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted). Therefore, Defendant Trammell is dismissed from this action for Plaintiff's failure to show her personal participation in any constitutional violations alleged in the complaint.

Plaintiff's only allegations against Defendant Marlar are conclusory statements that Marlar disregarded Plaintiff's "well-being and safety" (Dkt. 1 at 50). The only interaction alleged was a conversation between Plaintiff and Dr. Marlar concerning Plaintiff's desire to pick his food tray from the food cart (Dkt. 1 at 49). This incident does not show Marlar personally participated in the denial of Plaintiff's constitutional rights. Therefore, Defendant Marlar also is dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to show Marlar's personal participation in any constitutional violations.

**Medical Claims**

Plaintiff alleges Defendants Nurse Steve Thompson, Nurse Bill Thibodeaux, and Nurse Jane Doe were deliberately indifferent to his serious medical needs.[3] (Dkt. 44). He claims a number of medical issues violated the prohibition against cruel and unusual punishment under the Eighth Amendment.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from

---

[3] Plaintiff has not served Defendant Nurse Jane Doe pursuant to Fed. R. Civ. P. 4(m) (Dkt. 162). His response to the court's order to show cause why he had failed to serve her stated that her identity could be ascertained from his pod's log books for October 2, 2014 (Dkt. 167). It was Plaintiff's responsibility to provide the court with the proper information to locate Defendant Jane Doe. Nonetheless, the court finds Plaintiff has not stated a claim against Defendant Doe.

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

As discussed above, Plaintiff alleges that on January 23, 2013, he was taken to the medical unit for what he described as a "poisoning effect," but medical staff told him that perhaps he had acid reflux and returned him to his cell. Plaintiff claims he had the same problem of feeling poisoned in March 2013, but medical staff gave him a "runaround or evasive explanation" and sent him back to his cell.

The court finds Plaintiff has failed to state a claim for deliberate indifference. He does not describe being in any objectively serious pain that was diagnosed by a physician or that would be obvious to a lay person. He was seen by the medical staff who assessed him and diagnosed him with acid reflux. Plaintiff clearly disagrees with this assessment, but this disagreement does not amount to deliberate indifference to a serious medical problem.

Plaintiff claims he submitted numerous sick call slips to medical staff regarding the handling of food trays and what allegedly happened to Inmate Jones. (Dkt. 1 at 69-70). While he complains of possible contamination of food trays, this does not amount to a objectively serious medical claim. In addition, he has not shown any deliberate indifference by the medical staff with respect to the food trays. Instead, he merely suspects collusion between medical staff and other prisoner officials who want him to be harmed. These allegations do not state an Eighth Amendment medical claim.

Plaintiff further asserts he was not properly decontaminated after he was removed from his cell on September 4, 2014. He also claims his left little finger was broken, and he did not receive medical care from Defendant Nurse Thompson for the alleged injury. (Dkt. 33). He has not, however, presented any diagnosis or condition that would make the injury obvious to a lay person, nor does he allege that Thompson had any knowledge about the finger. Instead, Plaintiff claims Thompson believed nothing was wrong with Plaintiff. In addition, Plaintiff did not mention his finger in his request for health services that was filed less than a week after he was removed from his cell. (Dkt. 1 at 89-90). There is no evidence

10

that Thompson or the other medical staff knew of the alleged injury. Therefore, there is no deliberate indifference or Eighth Amendment violation.

As for the pepper spray decontamination, the court finds Plaintiff has failed to state any objectively serious medical harm. He states he can "barely see out of his right eye," but he does not point to any diagnosis, and the injury is not one that would be plainly obvious. (Dkt. 33). Defendant Thompson allowed Plaintiff to rinse his eyes, and Plaintiff does not allege he ever complained to medical staff about his eye. (Dkt. 45-46). Further, Plaintiff did not mention any problem with his eye in his request for medical services submitted less than a week after the incident. (Dkt. 1 at 89-90).

Regarding Plaintiff's medical claim from October 2, 2014, he noticed his urine was brown, and he believed there was blood in his urine. After the medical staff was alerted, Defendant Thibodeaux and Defendant Nurse Jane Doe arrived at his cell, took his vital signs, and inquired how Plaintiff felt. Plaintiff said he felt dizzy and nauseous. Plaintiff produced more urine, and Thibodeaux stated that "it's legit." Plaintiff claimed in a later grievance that he was left in his cell, but his urine returned to normal that same night. He asserts that at the time he wrote the complaint, he still had burning in his genital area and kidneys. (Dkt. 1 at 46-47).

After careful review, the court finds Plaintiff has failed to state a claim regarding this incident. While the possibility of blood in his urine may be concerning, that fact alone does not rise to an objectively serious harm, particularly when his urine was normal that evening. The alleged burning in his genitals and kidneys does not demonstrate a condition obvious to a layman or one that has been diagnosed by a physician. Because he received medical care on the day of the incident, he cannot show subjective deliberate indifference by the medical staff. He submitted no requests for medical services on these issues, so the medical staff could not have known about or ignored a serious medical problem. Plaintiff's Eighth Amendment medical claims against Defendants Steve Thompson and Bill Thibodeaux are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Jane Doe is dismissed for

11

plaintiff's failure to state a claim against her, pursuant to 28 U.S.C. § 1915A ("The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from [an] . . . officer or employee of a governmental entity. . . . [T]he court shall . . . dismiss the complaint, or any part of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .").

**Exhaustion of Administrative Remedies**

The defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for any of his remaining claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by talking with the affected staff, supervising employee, or other appropriate staff within three days of the incident.[4] If that is unsuccessful, he must submit a Request to Staff (RTS) to the law library supervisor or designated staff

---

[4] The court takes judicial notice of the Department of Correction's Offender Grievance Process, OP-090124, which is available at the DOC website at https://www.ok.gov/doc. *See Triplet v. Franklin*, 2010 WL 409333, at *6 n.8 (10th Cir. Feb. 5, 2010) (taking judicial notice of the Oklahoma Department of Corrections website, pursuant to Fed. R. Evid. 201).

12

member within seven calendar days of the incident. The supervisor or designated staff member routes the RTS to the appropriate staff member who must answer the RTS in writing within ten working days. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a Grievance Report to the reviewing authority with a copy of the RTS, asserting only the issue of lack of response to the RTS. The inmate must attach a copy of the request log showing that the inmate submitted a request. After the staff member has answered the RTS, the inmate may submit a Grievance Report, along with the RTS, to the reviewing authority.

An inmate must submit the Grievance Report within 15 days from the incident or from the answer to the RTS, whichever is later. If the reviewing authority rejects the inmate's grievance, the inmate may appeal to the Administrative Review Authority (ARA) within 15 days of receipt of the reviewing authority's grievance response. The final ruling of the ARA concludes the internal grievance process available to the inmate.

An inmate may submit a grievance of a sensitive or emergency nature directly to the reviewing authority, if the complaint is of a sensitive nature or there is a substantial risk of personal injury or other irreparable harm. The reviewing authority will determine whether the grievance is of a sensitive or emergency nature. When the reviewing authority determines that a grievance is not of a sensitive or emergency nature, the reviewing authority will inform the inmate that he must follow the normal grievance procedures. If an inmate disagrees with the reviewing authority's response, the inmate may appeal to the ARA under the same procedures as a regular appeal. (Dkt. 73-11 at 7-17).

**Plaintiff's Grievance Attempts**

The record shows that on September 15, 2014, Plaintiff submitted an "Emergency Grievance," concerning the food tray issue and his suspicions about Inmate Jones (Dkt. 73-16 at 9-10). He asked that a memorandum be issued warning officers that if they continued to mishandle food trays, they would be fired on the spot, and directing officers to allow Plaintiff to choose his food tray or give him a food sack that had been stapled shut by the kitchen

staff. *Id*. at 9. The grievance was returned unanswered on September 17, 2014, because Plaintiff had not attached an RTS, the grievance raised more than one issue, and the grievance was "irrational not logical." *Id*. at 8. Plaintiff did not appeal. (Dkt. 73-14 at 2).

On December 8, 2014, Plaintiff submitted another "Emergency Grievance," complaining about the inadequacy of the law library. (Dkt. 73-16 at 6-7). This grievance was returned unanswered on December 15, 2014, because no RTS was attached to it. *Id*. at 5. Again, Plaintiff did not appeal. (Dkt. 73-14 at 2).

On December 10, 2014, Plaintiff submitted an "Emergency Grievance," again complaining about the food tray issue. (Dkt. 73-16 at 3-4). The grievance was returned unanswered on December 15, 2014, because there was no RTS attached. *Id*. at 2. Plaintiff did not appeal. (Dkt. 73-14 at 2).

Plaintiff submitted several Requests to Staff concerning various issues between December 2014 and April 2015, but he filed no grievances on these issues. (Dkt. 73-23 at 2-9). On December 2, 2014, he submitted an RTS to the Law Library Supervisor, complaining about law library resources during the months of September and October 2014. (Dkt. 73-15 at 2-3). The response stated that the RTS concerned more than one issue, and Plaintiff had access to the Library Resource Center on December 3, 2014 "for at least 1+ hour." *Id*. at 2.

On December 3, 2014, Plaintiff submitted an RTS to the OSP Trust Fund Officer, requesting the staff to disburse money from his savings account for his filing fee. *Id*. at 4-5. The response stated that Plaintiff needed to submit the proper paperwork to the Trust Fund for disbursement. *Id*. at 4.

On December 11, 2014, Plaintiff submitted an RTS requesting a transfer from his "noisy pod," because he could not concentrate on his legal work and for heath and safety reasons. *Id*. at 6-7. The response advised him to address the issue with his unit team. *Id*. at 6. On January 12, 2015, Plaintiff sent an RTS to the Trust Fund regarding payment of his filing fees. *Id*. at 8-10. The response by the staff explained the process of disbursement. *Id*.

at 8.

Plaintiff's February 12, 2015, RTS to the Law Library Supervisor requested use of the law library computer, and the response stated he was given access to the computer on February 13, 2015. *Id*. at 11. His February 17, 2015, RTS to the Law Library requested his disbursement receipts for legal mail he had sent. *Id*. at 12-14. The staff responded by giving him the disbursement slips. *Id*. at 12. On March 30, 2015, Plaintiff submitted an RTS to the Trust Fund Officer, requesting disbursement slips for his legal mail. *Id*. at 15-18. The April 3, 2015, response advised Plaintiff that he would need to send a disbursement to pay for the requested copies. *Id*. at 15. He submitted another RTS on April 3, 2015, on the same issue of his legal mail disbursement, and the response reiterated that he would have to send a request for disbursement. *Id*. at 19.

Plaintiff has submitted a copy of a Misconduct/Grievance Appeal Form to Administrative Review Authority alleging he submitted as "privileged mail" through the facility legal mail supervisor. (Dkt. 147 at 2). The appeal form states that Plaintiff received a response from the reviewing authority at his facility on August 7, 2015. The form further states the response set forth multiple deficiencies with Plaintiff's related grievance and Request to Staff. In addition, the issue was not grievable, because it was in litigation and was not of a sensitive or emergency nature. (Dkt. 147 at 3). The court finds this document does not demonstrate that Plaintiff has exhausted the administrative remedies for his claims in this action.

After careful review, the court finds Plaintiff failed to complete the grievance procedure for these claims. He filed no grievance appeals for any of his issues, thereby failing to complete the process. Therefore, Plaintiff's remaining claims are dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies.

**ACCORDINGLY,** Plaintiff's second motion to object to the District Judge's impartiality and denial of Plaintiff's motion to stay the proceedings (Dkt. 96) is DENIED.

15

The defendants' motions to dismiss (Dkts. 75 and 133) are GRANTED. Defendants Anita Trammell and John Marlar are dismissed for Plaintiff's failure to show they personally participated in the alleged constitutional violations, pursuant to Fed. R. Civ. P. 12(b)(6). The medical claims against Defendants Steve Thompson and Bill Thibodeaux are dismissed for Plaintiff's failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Jane Doe is dismissed for plaintiff's failure to state a claim against her, pursuant to 28 U.S.C. § 1915A. All remaining claims are dismissed without prejudice for Plaintiff's failure to exhaust the administrative remedies for the claims, pursuant to 42 U.S.C. § 1997e(a). All remaining pending motions are DENIED as moot. This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g). *See Thomas v. Parker,* 672 F.3d 1182, 1183-85 (10th Cir. 2012).

**IT IS SO ORDERED** this 23rd day of March 2016.

**Dated this 23rd day of March, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma